IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      vs.                                                                               13-CR-6137-FPG

TERRANCE JUNOT III,

                      Defendant.
_____

## STATEMENT OF THE GOVERNMENT WITH RESPECT TO SENTENCING FACTORS

**PLEASE TAKE NOTICE**, that the government adopts the findings of the December 9, 2013 Pre-sentence Investigation Report with respect to sentencing factors except as to paragraphs 37 (acceptance of responsibility) and 42 (commission of sexual act by force). The plea agreement differs from the Sentencing Guideline calculation in the Presentence Report in that the plea agreement did not apply enhancements for either of these items. Pursuant to United States v. Lawlor, 168 F.3d 633 (2d Cir. 1999), the Government is bound to advocate the calculation in the plea agreement.

Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

The defendant is required by 18 U.S.C. §3013 to pay the sum of $100 at the time of sentencing. Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

In the event present counsel for the defendant will continue to represent the defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is

requested that a letter so advising be sent to:

> Asset Forfeiture/Financial Litigation Unit
> U.S. Attorney's Office--WDNY
> 138 Delaware Avenue
> Buffalo, New York 14202

If a letter is not received within 10 days of sentencing, the defendant will be directly contacted regarding collection of the financial obligation(s).

Upon the ground that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the government hereby moves the Court to apply the additional one (1) level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(b).

The United States reserves the right to respond to any filings made by the defendant.

I.   **The Facts**

On March 16, 2013, Greece resident, PARENT[1] found sexually explicit chats between her 13 year old daughter (CHILD) and the 36 year old defendant on CHILD's cell phone. PARENT saw chats where the defendant solicited CHILD to send him sexually explicit photographs of herself. PARENT also saw photographs which the defendant sent to child; including some of his face, some with only his penis, and some where he was completely naked with both his face and erect penis visible. PARENT recognized the

---

[1] The names of PARENT and CHILD are known to law enforcement but are not being used in this filing due to the nature of the charges.

defendant's face because she knew him from the local bowling alley where they socialized. The defendant has also known CHILD for several years. After finding this material on CHILD's phone, PARENT immediately contacted the Greece Police Department. Due to the nature of the alleged conduct, the Greece Police contacted the FBI Cyber-Crimes Task Force upon receiving the information for assistance with the investigation.

The day after PARENT notified the Police, CHILD contacted the defendant and told him that her mother knew about their relationship. The defendant later confirmed this fact to the FBI. Sometime between March 17 (the date CHILD told him) and March 21 (when FBI Agents interviewed the defendant), the defendant admitted to deleting all chats and photographs of CHILD from his cell phone. He even told agents he removed Tango, the smart phone Application he used to chat with CHILD, from his cell phone.

The investigation uncovered that the defendant engaged in hundreds of online text and video chats with CHILD. Many of these chats with the 13 year old girl were sexually explicit in nature. Among these were chats where the defendant directed CHILD to masturbate for him (both on and off camera) and show him various parts of her body (including her breasts and vagina). He also directed her to take sexually explicit photographs of herself and send them to him on his cell phone. These images were recovered in the course of the investigation.

Shortly after the defendant became a suspect, FBI Agents interviewed him at his home before executing a search warrant. Among other admissions, the defendant admitted to; knowing CHILD and her parents; asking CHILD to send him sexually explicit photos; knowing CHILD was under age; and knowing it was wrong to do so.

The defendant was arrested the following day, Friday March 22, and the government moved for detention at his initial appearance citing both his danger to the community as well as his risk of flight. The probation department met with the defendant and prepared a pre-trial services report recommending that the defendant be detained. A detention hearing was held on or about Monday March 25 at which both the government and defendant proceeded by way of proffer. Following the hearing, Magistrate Feldman ordered the defendant detained as a danger to the community, finding that no condition or set of conditions would reasonably assure the safety of the community. The defendant retained private counsel and they filed a motion to have the District Court review the detention Order. Another detention hearing was held before the District Court on or about April 30.

Between the time of the first and second detention hearing, FBI Agents continued the investigation of the defendant and his actions towards 13 year old CHILD, which as of that time did not include evidence of physical contact between them. However, after re-interviewing CHILD, the Agents believed that the defendant did in fact have sexual contact with the girl. In the course of that meeting, CHILD divulged that the defendant; had touched her private parts under her clothes, had tried to pull her pants down, had touched her breasts under her clothing, had exposed his penis to her, tried to get CHILD to touch his penis, and tried to get CHILD to put her mouth on his penis. These acts took place in the defendant's car at or near the defendant's place of employment, Dom's Bowling Alley.

CHILD also told investigators that the defendant had touched her buttocks, over her clothing, on another occasion while at the bowling alley. CHILD confirmed that the incident in the car was the subject matter of an online chat which was recovered during the

investigation. The Court will recall that on March 4, the following chat took place between the defendant and CHILD;

| | | |
|---|---|---|
| junot | | ok *I just don't want u feeling bad about it* |
| CHILD | | Its just ik u wouldn't *but I kept thinking like the first time we did stuff in the car I thought u were gonna look at me like something bad or like a bad person and the second time that's y I was always quiet cuz I thought that :/* and I don't but I don't want u to look at me like a bad person or like anybody else seeing my pictures and stuff but I still want to do it and stuff |
| junot | | I don't look at u bad and *I don't want u thinking I'm a bad man either for doing that stuff* |
| CHILD | | I don't I promise babe if I did I would tell u |
| junot | | ok :) |
| CHILD | | :) would u tell me |
| junot | | yes I would *just remember no one ever can find out not even* [REDACTED name of CHILD's Best Friend] |
| CHILD | | I know nobody will tj its just mine and your little secret:) |

*Emphasis added*

In addition to learning about the allegations of sexual contact between the defendant and CHILD, Agents also located another girl whom the defendant had solicited online. In the course of the forensic review of the defendant's computer, FBI Agents located multiple photographs of another young looking female child. These photographs were not sexually explicit, but were consistent with images that might be posted to social networking sites, like FaceBook. Investigative techniques identified the child depicted in these photographs recovered from the defendant's computer as CHILD-2. Agents conducted an interview with

[5]

CHILD-2 shortly before the second detention hearing. CHILD-2 was born in 1997, and was currently 16 years old.

CHILD-2 advised investigators that she knows the defendant as a friend of her fathers who they met through the bowling alley (just like CHILD). She reported that her family socialized with the defendant and used to go swimming at the defendant's house as well as camping. At one point on a camping trip, the defendant asked CHILD-2 if she wanted to sleep in his tent with him.

CHILD-2 indicated that when she was 13, she got a cell phone. She stated that the defendant got the phone number and *immediately started texting her*. She described him as texting her "a lot". The defendant exhibited the same "grooming" type behavior with CHILD-2 as he did with CHILD. Specifically, he would text her about picking her up at her house and taking her somewhere. He would text her that they should "get together", and would persist in his contacts with her until she responded. During this time, CHILD-2 was 13 years old (*the same age as CHILD*) and the defendant was 33 years old. Although no sexually explicit conduct occurred, CHILD-2 described the defendant's persistent attentions as "strange" and "creepy" and said they made her uncomfortable.

CHILD-2 also told the FBI that the defendant would "like" the photos of herself she would post on her FaceBook page. She thought this was "weird". The FBI confirmed that the photos of CHILD-2 recovered from the defendant's computer were the same type posted to her FaceBook page. Further, investigators found links to CHILD-2's FaceBook page on the defendant's computer.

Significantly, both CHILD and CHILD-2 were the same age when contacted by the defendant. Likewise, the defendant used his friendship with both CHILD and CHILD-2's parents to gain access to the girls. The defendant similarly used his position at the bowling alley to further his relationship with CHILD and CHILD-2. The defendant also sent large numbers of text messages to both CHILD and CHILD-2. The defendant even visited both CHILD and CHILD-2's FaceBook pages.

Following the April detention hearing the defendant was again ordered detained, and he has been in custody since then. On September 18, the defendant waived indictment and entered a guilty plea to a one count Criminal Information charging online enticement of a minor. However, due to the facts of the case, the parties agreed that the USSC Sentencing Guideline cross reference for production of child pornography applied, so the plea agreement reflects those Guideline numbers. The government also advocated for two additional enhancements in the plea agreement, including a two level enhancement for sexual contact with CHILD, and the two level enhancement for obstruction of justice. The defendant reserved the right to argue that those enhancements did not apply.

II.     The Section 3553(a) Factors Support a Guideline Sentence

In reviewing the section 3553(a) factors, as enumerated in Title 18 of the United States Code, the government respectfully requests the Court particularly consider the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, as well as to protect the public from further crimes. 18 U.S.C. §§ 3553(a)(1) and (a)(2).

### A. An Individualized Assessment of this Defendant Supports the Imposition of a Guideline Sentence

The government submits that the sentencing guideline calculation advocated by the government in paragraph 15 of the Plea Agreement, which, based on an adjusted offense level of 35, and a criminal history category of I, recommends a sentencing range of 168 to 210 months imprisonment, a fine of $20,000 to $200,000, supervised release of at least 5 years up to life, and a $100 special penalty assessment is appropriate. The government asks this Court to sentence the defendant to imprisonment within the guideline range, a 25 year period of supervised release, and a $100 special penalty assessment.

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the §3553(a) factors. United States v. Dorvee, 616 F.3d 174, 180 (2010) quoting United States v. Gall, 552 U.S. 38, 49-50 (2007); see also, United States v. Aumais, 656 F.3d 147 (2d Cir. Sept. 8, 2011). In Aumais, decided in September 2011, the Second Circuit upheld the guidelines sentence imposed by the district court, noting that the sentence was based upon an "individualized assessment" of the §3553(a) factors. Aumais, at 157.

In this case and considering the §3553(a) factors, *as individually applied to this defendant*, a guideline sentence of incarceration is both appropriate and reasonable. This defendant admitted that for almost 3 months, he enticed a 13 year old child to engage in sexual activity. He admitted that he persuaded, induced and enticed her to engage in sexual activity, and also caused her to produce sexually explicit photos of herself which he had her send to his phone. And he did all this knowing that she was only a child. On at least one

occasion, the defendant also engaged in sexual contact with the CHILD in his car. When he found out that her mother knew about this activity, and he thought law enforcement might show up at his door, he deleted all the images, online chats, contacts, and even the program he used to chat with her.

### B. The defendant obstructed justice when he deliberately destroyed all evidence linking him to CHILD

The facts clearly support the 2 level enhancement pursuant to Guideline Section 3C1.1. In the plea agreement, the defendant admitted that;

> On or about March 17, the defendant learned that Victim's mother found out about his online contact with her child. As soon as he learned this, the defendant deleted the chat program he used to contact Victim from his cell phone along with all text messages and images sent to and received from Victim. He did so knowing that law enforcement would be contacting him about this conduct.

> See: Docket Item 23, Plea Agreement, paragraph 7(e) Filed 9/18/13

When PARENT found the sexually explicit chats on her 13 year old daughters cell phone she had no doubt about what was taking place. These chats solicited CHILD to send the defendant *sexually explicit* photographs of herself. PARENT also saw photographs which the defendant sent to her child; including some of his face, *some with only his penis visible*, and some where *he was completely naked with both his face and erect penis visible*. This was most disturbing for PARENT because she *recognized* the defendant from the local bowling alley where they socialized. When PARENT found out about this activity, CHILD immediately notified the defendant that her mother knew. As he later told the FBI, the defendant's

response was "…oh crap". (see PSI at paragraph 44). He also told Agents that he knew that law enforcement would be coming to talk to him "…absolutely. I know it's wrong" (id).

Knowing that, however, he then *deleted all evidence of CHILD* from his cell phone. He did this for one and only one reason – to obstruct the law enforcement investigation of his unlawful actions with CHILD which he knew was coming. The defendant cannot now claim that he was simply conducting routine clearing of photos from his phone. Again – he removed *all evidence* of CHILD from his phone. Not just her photos. Not just her chats. Not just her contact information. He deleted everything related to her. Right after he found out that CHILD's mother knew about his actions, and right when he believed law enforcement would be coming to talk to him.

He went so far as to delete Tango, the program he used to contact her, and which contained all the inculpatory chats and photographs. The government submits that the <u>only</u> reason to delete the Tango program at the exact time he knew law enforcement would be coming to talk to him about his contacts with CHILD was with the deliberate intent that law enforcement not be able to recover any data linking the defendant to CHILD from his cell phone. He was successful in that effort[2].

### C. The defendant had sexual contact with CHILD.

The victim has disclosed that sexual contact took place between her and defendant. In fact she made these disclosures on several occasions. CHILD told FBI Agents around the

---

[2] Law enforcement seized and analyzed the defendant's phone as part of the investigation but there was no evidence remaining on the phone itself linking the defendant to CHILD. Fortunately, the FBI was able to obtain evidence of the chats and digital images directly from the chat program's parent company as well as through analysis of CHILD's cellphone, and the examination of other phone records.

time of the second detention hearing that the defendant had touched her private parts under her clothes, tried to pull her pants down, touched her breasts under her clothing, exposed his penis to her, tried to get CHILD to touch his penis, and tried to get CHILD to put her mouth on his penis. She said these acts took place in the defendant's car.

The Application note to Guideline Section 2G2.1(b)(2) relies on the definition of sexual contact set forth in Title 18, United States Code, Section 2246(3). This section defines *sexual contact* as "…the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person". See 18 U.S.C. 2246(3). The government submits that each and every one of the acts described by CHILD would be sufficient for the enhancement for sexual contact to apply. But sadly, there is more.

In October of 2013, well after the defendant pled guilty to the charge, a guidance counselor at CHILD's school contacted law enforcement to report that CHILD disclosed sexual abuse to him. Another forensic interview was conducted with CHILD at the Bivona Child Advocacy Center on October 28[3]. During that interview, CHILD made additional disclosures about sexual contact between herself and the defendant. She told the interviewer that sexual activity occurred in the defendant's car[4]. Specifically, CHILD said "he asked me iF i wanted to have sex and i said NO but then he kept Like trying to take my clothes off

---

[3] A redacted 4 page copy of the interview was provided to defense on November 7, 2013.

[4] In this statement, CHILD identifies the defendant's car as a black in color "PT Cruiser thing". The PSI reflects at paragraph 81 the fact that the defendant owns a 2007 Chevrolet HHR, which is the Chevrolet equivalent of the PT Cruiser. Further, law enforcement photographed a black Chevrolet HHR in the defendant's driveway at the time of the search warrant.

and i pushed his hand away but he diddnt Listen to me and he was already Naked and had the condom on and he Like pushed my hand away and Took My clothes off and i told him no and to stop but he diddnt Listen[5]".

The counselor continued by asking CHILD if she wanted to have sex with TJ[6] and CHILD said no. She said that TJ kept trying to get her to take her clothes off and that TJ took his clothes off. TJ had the condom on, which CHILD described as a white, square package and it was yellowish in color. CHILD said that TJ had two condoms and used one. When asked who took her clothes off, CHILD said, "he did, he was in front seat like standing up in front of me" while CHILD was in the passenger seat.

When asked what happened next, CHILD did not respond. She said that TJ "told me not to tell anybody". TJ also "told me I had to do it". When asked what "it" meant, CHILD did not respond. When asked if "it" was a word already on the paper CHILD had written on, CHILD nodded yes. CHILD circled the word, "sex".

CHILD said the condom was already on TJ's "private part" and she admitted that it did touch her "private part". When asked if TJ tried to get her to do something else, CHILD nodded yes and took the pad and pen then wrote, "he made me put my mouth on his private part and play with it". When asked if TJ still had the condom on CHILD shook her head no. CHILD was asked if TJ said what would happen if she told anyone what happened with him and her. CHILD responded by saying, "that he would hurt me". She went on to say that TJ made her swear to God on her grandpa's grave and promise not to tell anyone.

---

[5] CHILD wrote this out on a piece of paper for the interviewer. It is included verbatim with no corrections or changes.

[6] Defendant Terrance Junot goes by the nickname "TJ"

When asked how she felt now about telling, CHILD responded, "guilty…guilty I told".

This latest disclosure about the sexual activity that occurred in the defendant's car is again consistent with the March 5, 2013 email in which CHILD talks to the defendant about "…the first time we did stuff in the car". Significantly, the defendant does not deny that "stuff" happened in the car – in fact just the opposite. He reassures CHILD that he doesn't look at her differently now because of it, nor does he want her to think of him as a "…bad man either for doing that stuff". He then goes on to implore CHILD that "…no one ever can find out not even [her best friend]".  The implication of that chat is crystal clear and leads to no other conclusion but that sexual contact took place between the 36 year old defendant and 13 year old CHILD in his car.

## CONCLUSION

The section 3553(a) factors, as enumerated in Title 18 of the United States Code, list among other things, the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes. All these factors support the imposition of a guideline sentence of at least 168 months imprisonment, a 25 year period of supervised release, and a $100 special penalty assessment. A guideline sentence is appropriate for both general as well as specific deterrence due to the nature of the crimes charged.

In his interview with the FBI, the defendant was asked about his relationship with CHILD. Junot explained to the FBI that he knew CHILD was very insecure, had a bad family situation, and that "she has had to deal with trying to be a kid and an adult at the same time". (see Defendant's Statement to the FBI, Filed as Document 10-1, Government

Exhibits, Filed April 22, 2013, at page 2).  He claimed to have befriended CHILD and said he was trying to be "supportive of her" (Id.). He then tried to justify having her send graphic photos of her vagina to him, not because *he* wanted them, but rather, to "*make her happy*." (Id. emphasis added). He repeated this to Agents by saying CHILD "…was a good girl. It was just that she was unhappy and *she looked to the wrong person*…." (Id. at 4. Emphasis added).

The defendant victimized and sexually exploited a 13 year old girl. But this was not a federal agent acting as a child online to catch a predator. This was a real girl, one who the defendant knew. He knew the child's family; he knew her strengths and her weaknesses. He groomed the 13 year old girl and learned her secrets and her dreams. He then used this knowledge to seduce her online, away from her family's protection, and he got her to trust him. But, as he told the FBI, she just looked to the *wrong person*. He betrayed her, violated her trust, and preyed on the gullibility and fragility of a 13 year old girl for his own carnal pleasure. And he did so over a period of months. When he learned that law enforcement would be involved, he cowardly destroyed every last trace of her on his cell phone, including deleting the very program he used to solicit and entice CHILD.

For these reasons, the United States respectfully requests the Court consider the Title 18, U.S.C. Section 3553A factors as they apply *individually to this defendant* and impose a sentence within the Guideline range, of at least 168 months imprisonment, a 25 year period of supervised release, and a $100 special penalty assessment.

DATED:	Rochester, New York, January 6, 2014

                              Respectfully submitted,

                              WILLIAM J. HOCHUL, Jr.
                              United States Attorney


                       By: <u>/s/Craig R. Gestring</u>
                              CRAIG R. GESTRING
                              Assistant United States Attorney
                              United States Attorney's Office
                              Western District of New York
                              100 State Street, Rochester, New York 14614
                              (585) 399-3979
                              craig.gestring@usdoj.gov



TO:	James Philippone, Esq., Counsel for Defendant
       David Spogen, United States Probation Department