UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------
UNITED STATES OF AMERICA

       -against-                    **SENTENCING FACTOR STATEMENT**
                                        **Index No.: 13-CR-06137**

TERRANCE JUNOT III,

                            Defendant
------------------------------------------------------------

### Sentencing Guidelines Calculation

It is the Defendant's position that Guidelines §2G.1(b)(2)(A) and §3C1.1 do not apply and that with a total offense level of 31 and a criminal history category of I, the Defendant's sentencing range should be a term of 120-135 months with a period of supervised release up to 25 years. The Government concedes that the sentencing range should be no more than 168-210 months with a period of 25 years supervised release.

### Statement of Facts

It is un-controverted that the Defendant became involved in an inappropriate online relationship with a 13 year old girl. The Defendant knew the victim. He did not stalk her, or prowl the internet to find a child to prey on.

The parties agree that immediately upon questioning by authorities prior to his arrest, Mr. Junot confessed to his online relationship with the child. Later, when told that a

warrant had been issued for his arrest, the Defendant immediately turned himself into police.

The only issues at sentencing are whether the Defendant obstructed justice, and whether the Defendant had sexual contact with the victim. The Defendant disputes the Government's position that the Defendant had sexual contact with the victim and that the Defendant obstructed justice.

**The Nature and Circumstances of The Offense and The History and Characteristics of The Defendant Dictate The Court Should Impose The Mandatory Minimum Sentence of Ten Years Incarceration**

Prior to his arrest in this case, the Defendant's criminal background had been minimal, making him a level 1 offender under the plea agreement. The Defendant's only prior conviction was a Harassment 2nd back in 1996, for which he received a fine of just 100 dollars. The minimal sentence clearly reflected the minor nature of the offense.

With regard to the case at bar, while there is no excuse for the Defendant's relationship with the victim, it is important to consider how the relationship came to exist. The Defendant did not go on the internet to seek a young child to begin an elicit relationship. The relationship with the victim in this, however

inappropriate, evolved over time.

In the beginning, Mr. Junot acted as a mentor to the young girl and there was no sexual or inappropriate element to the interactions between the two. However, as the conversation between the two became more intimate and personal, the Defendant began to answer questions the victim had that were of a sexual nature. At this point, when the Defendant should have ceased contact or redirected the conversation, he began to interact with the victim, over the internet, as if she were an adult. These actions are inexcusable and the ten year minimum sentence in this case certainly reflects the seriousness of the offense.  However, the Defendant's actions in this case were isolated.

The Government, at the last bail hearing, argued that they had located a second child who the Defendant was "grooming", apparently because he "liked" her photos on Facebook and sent her an unspecified number of text messages. Additionally, the 3Government claimed the victim felt uncomfortable because the Defendant invited the girl to sleep in the same tent. However, that argument is misleading because the tent was large and had other occupants besides just the girl and Junot.

Of course, after seeing the Defendant on the news and learning of the instant case, one can imagine it was not difficult for the F.B.I. to find someone to say the Defendant was "creepy" or question his motives. This sort of "piling on" is not

-3-

uncommon when an allegation of sexual misconduct is made public. It is also true that this alleged second victim never once reported the Defendant to a parent or anyone else for the behavior that is now being called into question.

In spite of extensive investigation by the F.B.I., the Government has found no other children who were victimized by the Defendant. The Defendant has, throughout his life, maintained several normal relationships with women of his own age. The Defendant does not fit the stereotype of the predatorial pedophile that surfs the internet or hangs out on playgrounds with the sole intent of preying on young children. The Defendant's history shows that he had lived a law abiding life up to this point, and the specific characteristics of this crime dictate that the Defendant should be sentenced to the minimum of ten years.

In addition to this crime being isolated, the extent of the Defendant's contact with the victim was solely through online communications. The Pre-Sentence Report alleges that Mr. Junot had sexual contact with the victim, and thus his score under the sentencing guidelines should be increased.

The only evidence of any sexual contact between Mr. Junot and the victim are the statements of the victim, which have been inconsistent and heavily influenced by the agents who questioned her, and specifically, the way in which the questions were asked.

When the victim first spoke to law enforcement shortly after her mother became aware of her communications with Junot and reported it to police, she gave no information regarding sexual contact with the Defendant. She stated that she had never had sex, and that the two had been alone on just one evening, after "Rock n' Bowl". Based on statements from the victim's mother, and Facebook chats between the Defendant and the victim, this meeting occurred on December 30th, 2012, before any of the explicit chats or pictures had been exchanged.

Next, on April 24th, 2012, ironically just days before Mr. Junot was scheduled for a bail hearing, agents Couch and Tucker decided to go back to the victim and attempt to extract more information regarding sexual contact with the Defendant. During this meeting, while communicating on paper, the victim indicated there was no vaginal intercourse between herself and the Defendant, then indicated that no oral sex occurred, then indicated that oral sex did occur, then finally indicated that she didn't even know what oral sex was, a statement clearly contradicted by the content of her chats with Junot. Then, after again being asked, the victim stated that Junot "tried" to have oral sex with her. In just that exchange alone, the victim changed her story 3 times.

Suddenly, Couch's report shifts from a question by question narrative and simply states that several sexual acts were

confirmed to have occurred by the victim "nodding affirmatively". Implicit in Couch's method of questioning is that HE, not the victim is the one supplying the operative facts. The victim supplies none of the information on which the Government bases its claims, but merely has to nod her head affirmatively.

After month's of silence, on October 28th, 2013, with sentencing documents due in just a few short weeks, agents Couch and Tucker again manage to extract more information from the victim regarding sexual contact with Junot. This time, the facts have changed yet again. Instead of the alleged contact having occurred on December 30th, 2012, the date the victim and her mother both say was the only time Junot was alone with the victim, now the alleged date of sexual contact is Junot's Aunt Carla's husband's birthday, which was being celebrated at the bowling alley on January 19th, 2013.

As was the case in each of her preceding version of events, the nature of the sexual contact escalates again. Now, after twice denying that Junot even attempted to have vaginal intercourse with her, the victim claims that Junot attempted to do just that.

While being interviewed at Bivonia Child Advocacy by a woman identified as Whitney, the victim is again prodded and supplied with facts rather than having the facts elicited from her. But most significantly, prior to making any statements about Junot, the victim asks if Junot would "have the chance to tell people

-6-

that what she had to say was not true." The child does not indicate that she is afraid of the Defendant, or even embarrassed by the allegation, her only concern is whether or not the Defendant will have an opportunity to rebut her allegations. This kind of question from a victim makes her story questionable at best. The report goes on to indicate that, apparently in an effort to elicit the most shocking allegations possible, the victim was (falsely) told that Junot would not be able to contradict any allegations she made against him.

Finally, the victim alleges that the sexual contact occurred on Junot's Aunt Carla's birthday, which was on January 19th. That claim was contradicted by the statement of the victim's mother herself saying that the only time her daughter was alone in a car with the Defendant was December 30th, 2012. The Government maintains that the allegations of sexual contact are supported by a conversation between the Defendant and the victim that occurred almost two months later on March 5th, 2013, wherein there is talk of doing "stuff" in the car. This vague reference takes place almost two and a half months after the only date on which anything of a sexual nature could have occurred. It is illogical to assume that the victim's statement and this one chat are "consistent" given the amount of time lapsed between the date the incident would have had to occur and the date of the chat. Moreover, given the graphic and unfiltered nature of the chats, it seems incongruent to suggest that there would not be a more

clear mention of any sexual contact that occurred if the Government's theory were true.

Overall, the allegations of sexual contact rest on nothing more than three extremely contradictory statements from a child victim who is clearly troubled beyond what happened between her and Junot, a fact that is clear from the content of her chats with Junot. As a result, there is no reliable evidence which can support the Government and Probation's assertion that Mr. Junot should receive a two point increase for having sexual contact with the victim in this case. To imprison the Defendant for several years based on such weak evidence would be unfair and unjust.

The Government has also argued throughout this case that the Government deleted pictures and chats only after finding out that the victim's mother had contacted authorities. This is also not supported by evidence. While it can be established that the victim informed the Defendant that her mother had learned of their relationship, no where in the record is it established that the Defendant was told that the victim's mother contacted law enforcement. Moreover, the Defendant deleted pictures and chats continuously throughout the relationship out of fear that his parents or others would learn of his correspondence with the victim.

Mr. Junot did admit to erasing the Tango application in a panic after learning that the victim's mother had seen the chats,

however, it was only after covering several other topics, Mr. Junot later stated that he expected law enforcement to come because he "knew it was wrong." The statements are made completely independent of each other and in no way is there a causal relationship between the two nor did Mr. Junot say that his reason for deleting the chats was to obstruct justice. The government is simply asking the Court to just assume Mr. Junot did so to hinder law enforcement, when in fact, he simply panicked at the thought of the embarrassment and shame such a relationship would bring if the chats were discovered. There was no specific intent to hinder any investigation.

The facts do not demonstrate the requisite state of mind for the Defendant to be found to have obstructed justice, and in fact, the defendant's actions when confronted by law enforcement would lead one to an entirely opposite conclusion. The Defendant immediately and truthfully told the police everything that happened. To further punish a man who has already confessed to police, cooperated fully with the investigation into his actions and plead guilty to a ten year minimum sentence for obstruction of justice is both confounding and would be a mis-application of the provision.

There can be no doubt that any sexual crime involving minors is a serious offense. Under the plea agreement in this case, the Defendant's minimum sentence is ten years, which most would agree is a significant and appropriate punishment for a serious offense

such as this. Were the Defendant being prosecuted in State Court in connection with his actions in this case, it is possible and perhaps even likely that he would have served very little time in prison for his actions.

In addition to serving ten years in prison, the Defendant will spend the remainder of his life on the sex offender registry, further punishing him for his actions and, at the same time, insuring that he will never have an opportunity to re-offend.

Given the Defendant's lack of a criminal record, and the fact that the crime was isolated to one victim, ten years incarceration is more than adequate to reflect the seriousness of the offense.

Finally, the Defendant has already shown a commitment to bettering himself and becoming a productive, law abiding citizen upon his release. He has already earned his G.E.D. and plans to enroll in college courses while incarcerated. He has been a model prisoner. Imprisonment for more than the minimum of ten years would only serve to make the Defendant's transition to life outside of prison more difficult, and would serve not serve as any more a deterrent then a ten year sentence, which is already substantial by any measure.

### Conclusion

The Defendant has accepted responsibility for his crime and has cooperated fully with investigators from the moment they

-10-

contacted him in regards to this case. He has accepted a minimum of ten years in prison and possibly more for his actions. The section 3553 (a) factors, as discussed above, dictate that specific factors of this Defendant's crime, particularly that he is a first time offender, that he offered a full confession and cooperated with authorities, and that his interactions with the child did not involve sexual contact, dictate that the appropriate sentence in this case is 120 months incarceration.

Dated: January 7th, 2014

*James V. Philippone*
James V. Philippone, Esq.
PHILIPPONE LAW OFFICES
Attorneys for Defendant.
31 East Main Street, Suite 4000
Rochester, New York 14614

cc: Craig Gesting Esq., Assistant U.S. Attorney
    Dave Spodgen, United States Probation Department