United States District Court

Western District of New York

United States of America                                    Honorable Judge Geraci

vs

Terrance Junot III                                                 June 15, 2020

Inmate #: 22303055

Case# 13-CR-6137

Motion to Request Compassionate Release

18 USC 3582


    Comes now Defendant, Terrance Junot III, pro-se, asking this Honorable Court to grant Compassionate Release via the 18 USC 3582 due to the risks related to COVID-19 infection. This Court is the proper venue as it is where the Defendant received his original sentence for this offense.

    As a preliminary matter, Defendant respectfully asks this Honorable Court to consider this pro-se pleading liberally (see Fantone vs Latinie 786 F.3d 184 (3rd Circuit) 2015 and Erickson vs Pardis 551 U.S.89.94 2007).


Arguments

I.    Risk of COVID-19 Death

    The current COVID-19 pandemic is putting "at risk" individuals, especially those currently incarcerated, at serious risk of death. Even individuals without underlying conditions are at risk of death. The Defendant is 44 years old and suffers from severe allergies, a history of chronic bronchitis, and a family history of heart and lung conditions. Catching this disease could affect my breathing also causing possible death. According to the Center for Disease Control, any one of these conditions can be a fatal complication in conjunction with a COVID-19 infection.

    Many recent decisions throughout the country (including United States v. Kelly 3:15-CR-59 SD MS 5-1-20; United States v. Sawicz 08-CR-287 (ARR) ED NY 4-10-20, and Miller v. United States 16.20222-1 ED MI 4-9-20) have determined these conditions satisfy the "Extraordinary and compelling reason" required under 18 USC 3582(c)(I)(i) to grant Compassionate Release.

Until a vaccine against COVID-19 is widely available, the Defendant remains at grave risk, especially in the close quarters within FCI Loretto where the Defendant is currently housed.

II. Federal Bureau of Prisons Cannot Manage COVID-19

The Federal Bureau of Prisons (BOP) has been hit extremely hard by the COVID-19 pandemic. Some facilities such as FCI Lompoc have infection rates as high as 70%. Testing has also been an issue. The World Health Organization has stated that prisons around the world can expect "Huge Mortality Rates" from the COVID-19 pandemic, unless proper screening of inmates is in place. Unfortunately, the BOP is extremely far behind the curve. In response to a recent court filing, MDC Brooklyn and MCC Manhattan stated they were only able to test 24 of 2400 inmates. According to an AP news story filed by Michael Balsamo on April 30, 2020, only 2700 tests were conducted system-wide in the BOP and of those 2700, nearly 2000 have come back positive. That's a 74% overall infection rate. As time progresses, cases and illnesses will continue to rise and increase the death rate. Although, FCI Loretto is "reporting no COVID-19 cases" at this time and having tested only 1% of the 900 inmates at FCI Loretto; the fact remains that once symptoms do appear an uncontrollable outbreak would already be underway. There have been self-surrendered inmates and a few transfers who were quarantined for a 14 -day period then released to the compound with the possibility of being A-symptomatic.

According to the Marshall Project's COVID Tracking Project; (https://www.themarshallproject.org/2020/04/24/ tracking the spread of Corona virus in prisons) COVID-19 spreads more than 150% faster in prisons versus civilian populations. This is mostly due to the living conditions that make social distancing impossible. Given the Defendant's extreme risk of death from the exposure to COVID-19 waiting for the virus to strike could be a fatal delay.

There is also an issue of inadequate medical facilities at FCI Loretto to deal with a serious COVID-19 health crisis. There is only one respirator for 900+ inmates and not nearly enough staff to support widespread civilian hospitalization (as two correctional officers are required to escort each inmate patient and stand watch in three shifts throughout the inmates' hospital stay).

A recent decision in United States v. Loyd (Case no. 15-20394-1 ED MI, 5/21/20) spoke directly to the situation at FCI Loretto: FCI Loretto has reported cases of COVID-19, however, zero confirmed cases is more likely a result due to lack of testing rather than a lack of the virus' presence in the prison. There have been multiple inmates moved to quarantine for "unexplained reason" in view of multiple units. If anything, the Court is more concerned that inmates and staff members are interacting with one another as normal and blissfully aware of the

virus spreading throughout the prison. Another Court [United States v. Amarrah. No17-20464, 2020 WL 2220008(ED MI 5/7/20)] …found the following about the conditions at FCI Loretto.

[I]nmates currently eat, sleep and interact with each other in a confined space, making it easier for the virus to spread once introduced.

Inmates are still being transferred between facilities. Although the inmate is usually screened for symptoms; they are not tested for the virus, thus leaving potentially a-symptomatic individuals to spread the virus to others. Inmates are being subject to mandatory quarantine and still not provided basic protections from the virus. Inmates must purchase their own soap. Real hand sanitizer is considered contraband and inmates must buy the generic version on Commissary, which is ineffective in comparison to higher quality sanitizer. [Judge Tarnow continues:] During the courts hearing, Loyd corroborated that he is currently on lockdown in his unit under close quarters with approximately 80 other inmates. Considering the number of infected people Loyd is unknowingly in contact with continuing to incarcerate him…under these conditions could be a lethal decision. The Court refuses to join FCI Loretto in its' ignorance of a deadly virus hidden in plain sight. Therefore, extraordinary and compelling reasons exist for immediate Compassionate Release. Given the growing number of new infections, it is only a matter of time before the virus reaches FCI Loretto. It is imperative that the Defendant be released before this happens.

III. USC 3582 s Exhaustion Provision Not Mandatory

Normally, inmates seeking Compassionate Release must wait 30 days after a warden receives request or exhaust their administrative remedies.   The Defendant files his request on May 31, 2020 and was denied by Warden V. Moser on June 15, 2020.Defendant's appeal is pending. However, recent rulings in COVID-19 related Compassionate Release requests have waived the exhaustion clause. First, United States v. Kelly (3:13-CR-59, SD MS 5/1/20) states "3582 (c) (1) (A)'s exhaustion requirement [is]a non-jurisdictional claims-processing rule" and that given the two courses of relief offered in 3582 (c) (1) (A) (namely the exhaustion of remedies and filing 30 days after applying to the warden), the exhaustion requirement and timeliness are "equitable exception [that] plainly apply to the latter.

Also, in Unites States v. Sawicz (08-CR-287 (Arr) ED NY 4/10/20) exhaustion was waived citing Washington v. Barr (925 T.3d 109,118 (2nd Cir.2019)): Even where [administrative] exhaustion is seemingly mandated by statute or decisional law, requirement is not absolute." The Judge in Sawicz concluded "[a] court may waive the administrative exhaustion requirement where [exhaustion] would be futile…Where the administrative process would be incapable of granting adequate

relief...[or]where pursuing agency review would subject [the person seeking relief] to undue prejudice. Further, "undue delay if it in fact results in catastrophic health consequences" can justify waiving an administrative exhaustion requirement for any of those three reasons. "(Id.at 120-21)" The delay that the Defendant would experience if he had to wait for thirty days to expire before pursuing a motion for Compassionate Release in this court, would put him at significant risk of suffering catastrophic health consequences.

IV.   Defendants Incarceration History

Since Defendant's incarceration on March 13, 2013, he has been a model inmate. He has 100% clear conduct with no incident reports to date. Defendant has gone to great lengths to better himself by completing multiple classes such as HVAC (ASE certification class), multiple language classes to help communicate in society. Also, the defendant has participated in personal training classes to assist with becoming a better person.  He has also taken every hobby Crat class available to help manage time and increase job skill opportunities. He received his GED while incarcerated.  Defendant also has a job at recreation as a tool cage orderly, which is a very responsible position.  If were something to come up missing, the orderly would go to the SHU. The Defendant functions well in the "society" on the compound. He has tended a garden for 4 years and also other landscaping duties which can help in creating work on the outside.  He is attempting to enroll in college classes. In addition, the Defendant teaches the ceramic class and previously taught card making and calligraphy classes. Defendant participates in soccer, baseball, handball, racquetball sports within the compound when available.

As of this filing, the Defendant has served 70% of his sentence (84 out of 123 months) accounting for "good time." The Defendant's family is retired and on a limited income, and if allowed Compassionate Release, the defendant would be able to assist in supporting his family and relieve some of the financial burden.

V.   Re-Entry Plan

Defendant's friends and family have agreed to support the defendant with both a living arrangement and financial assistance until he can become self-sufficient. There is enough space in the residence for a 14-day quarantine.

The Defendant has a job lined up waiting for his release at Seyrek Sealers; 750 Lee Rd.; Rochester, New York 14606. Joining the workforce immediately upon release will have an added benefit for the Defendant by obtaining medical

coverage through an employer. He also has a vehicle to drive and has his license. Defendant will not be a burden on society. The Defendant has intentions of continuing attempting college classes.

VI.   Low Risk of Recidivism

Releasing the Defendant poses little risk to the community due to his extremely low risk of recidivism. Both versions of the BOP's Pattern Tool rate the Defendant as a "minimum risk" (the lowest level available), with a negative score in both metrics. There is a great deal of data regarding the low recidivism rate of sex offenders in general, including the Bureau of Justice statistics 2006 study showing less than a 5% recidivism rate; a lower rate than those for assault, DUI, robbery, theft, or drug offenses. (Only murder has a low recidivism rate). There were also 3-year studies done by Connecticut, Alaska, Nebraska, Maine, New York and California that rate the risk at generally less than 4%. (some of this data was introduced as part of the Scotus arguments during Packingham v. North Carolina. 2017 L 208397. U.S. no 15-1194 6/19/17.)

Given the Defendant's age, family and friends' assistance, having a vehicle and a job lined up, put the risk of recidivism or any new charges extremely low. The Defendant also plans on continuing in required programs if released.

VII.   Conclusion

Given the facts outlined in this motion, the Defendant requests this Honorable Court to grant relief in the form of immediate Compassionate Release or any other relief this Honorable Court deems appropriate.

Respectfully,   *Terrance L. Junot III*

Terrance L. Junot, III



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*

Loretto, Pennsylvania 15940

June 24, 2020

MEMORANDUM FOR INMATE POPULATION

FROM:     V. Moser, Warden

SUBJECT:  Reduction in Sentence (RIS)

"Under 18 USC 3582 (c) (1), an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response under subparagraph (a), the denial from the General Counsel under subparagraph (d), *or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier.*"

This means the First Step Act allows you to file an appeal for a denial of Compassionate Release/Reduction in Sentence (RIS) directly with the sentencing court 30 days after making the RIS request to the Warden.

**You do not need to file multiple RIS requests** or exhaust the Administrative Remedy process.

JUNOT, Terrance
Reg. No. 22303-055    NO 2-261

This is in response to your Request for Compassionate Release/Reduction in Sentence Consideration dated June 1, 2020. You request a Compassionate Release based on "Debilitated Medical Condition".

A thorough review of your request was completed utilizing Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence</u>. The Medical Review/Summary prepared in your case indicates you have not been diagnosed with an incurable, progressive illness and have not suffered from a debilitating injury from which you will not recover. You are not completely disabled and are able to perform activities of daily living. Additionally, you are not confined to a bed or chair more than 50% of waking hours. You do not have a diagnosis of a cognitive deficit which affects your mental capacity or function. Based on this information, you are not eligible for a Compassionate Release due to a Debilitated Medical Condition.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting COVID-19 does not currently warrant an early release from your sentence.

Accordingly, your request for Compassionate Release/Reduction in Sentence is denied. If you are dissatisfied with this response, the First Step Act allows you to file an appeal directly to the Sentencing Court 30 days after requesting compassionate release from the Warden without utilizing and/or exhausting the Administrative Remedy process. You may also appeal through the Administrative Remedy Program.

_V. Moser_
V. Moser, Warden

_June 15, 2020_
Date

J. Nuñot
28 Atlee Dr.
Rochester NY 14626

ATTN: Honorable
Judge Geraci

U.S. District Court
100 State St. Suite 2120
Rochester, NY 14614