IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TERRANCE JUNOT III,<br><br>                  Defendant. | 13-CR-6137-FPG |

## GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Meghan K. McGuire, Assistant United States Attorney, of counsel, hereby responds to the defendant's motion for compassionate release.

## PROCEDURAL HISTORY AND RELEVANT FACTS

The defendant first came to the attention of law enforcement in March of 2013 when the mother of a 13 year old girl found numerous sexual text messages and picture messages to and from the defendant on her daughter's phone. Further investigation revealed that the defendant had engaged in hundreds of online text and video chats with the 13 year old girl ("Minor Victim 1"). The defendant directed Minor Victim 1 to masturbate for him (both on and off camera) and show him various parts of her body (including her breasts and vagina). The defendant also directed Minor Victim 1 to take sexually explicit photographs of herself and send them to him on his cell phone.

Defendant's conduct went beyond virtual exchanges; he also had physical, sexual contact with Minor Victim 1. Minor Victim 1 initially disclosed that the defendant touched her private parts under her clothes, tried to pull her pants down, touched her breasts under her clothing, exposed his penis to her, tried to get her to touch his penis, and tried to get her to put her mouth on his penis. Later, Minor Victim 1 disclosed that the defendant had vaginal intercourse with her. These acts took place in the defendant's car at or near the bowling alley where the defendant worked.

Authorities also located a second victim ("Minor Victim 2"), who was 13 years old (the same age as Minor Victim 1) when she first obtained a cell phone and started receiving voluminous text messages from the defendant. The defendant's messages to Minor Victim 2 (like those to Minor Victim 1) were classic grooming.

On or about September 18, 2013, the defendant pled guilty to a one-count Information charging him with Enticement of Minor in violation of Title 18, United States Code, Section 2422(b). The charge carried a mandatory minimum sentence of 120 months. On or about March 4, 2014, the Court sentenced the defendant to serve a term of imprisonment of 144 months followed by a term of 10 years' supervised release. The conditions of the defendants' supervised release required him to receive sex offender-specific mental health treatment and avoid contact with individuals under 18 years of age.

As of the date of this filing, the defendant has served 84 months (56%) of his 144-month sentence. He is currently incarcerated in FCI Loretto where, throughout the COVID-19 pandemic, only 40 inmates (out of approximately 860) and 7 staff members have tested positive for COVID-19. Sixteen of the 40 inmates who tested positive and one of the staff

members have already recovered.[1]   Moreover, the defendant is currently housed in North 1 Unit of the FCI.   To date, each of the positive cases have been in the South 2 and Southeast Units.

The defendant submitted a request for compassionate release to the Federal Bureau of Prisons ("BOP") on June 1, 2020.   That request was denied on June 15, 2020. On July 17, 2020, the current motion was filed.   Thus, the government is not arguing that the defendant failed to exhaust his administrative remedies.

Upon receiving the current motion, the government notified Minor Victim 1.   She was audibly upset to learn of the defendant's request for compassionate release.   Minor Victim 1 indicated that she would not want the defendant released and that she is scared about the possibility of him being released.   Minor Victim 1 was so distraught at the notion of defendant being released in the near future that she was unable to finish the phone conversation.   According to Minor Victim 1's mother, Minor Victim 1 began crying and shaking.

## DISCUSSION

A court may reduce a defendant's term of imprisonment if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).   The Sentencing Commission's policy statement provides that a court may reduce a defendant's term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), the Court finds that:

---

[1] Source: https://www.bop.gov/coronavirus/, last visited August 7, 2020.

>(1) (A) Extraordinary and compelling reasons warrant the reduction;
>
>. . .
>
>(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Sentencing Commission's policy statement includes an application note that defines "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13(1)(A) as follows:

>(A) Medical Condition of the Defendant.—
>
>>(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>>(ii) The defendant is—
>>
>>>(I) suffering from a serious physical or medical condition,
>>>
>>>(II) suffering from a serious functional or cognitive impairment, or
>>>
>>>(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.

A defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Clarke*, No. 09 Cr 705 (LAP), 2010 WL 4449443, at

4

*1 (S.D.N.Y. Oct. 29, 2010) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (quoting *Butler*, 970 F.2d at 1026)).

### A. THE DEFENDANT HAS FAILED TO ESTABLISH EXTRAORDINARY AND COMPELLING REASONS FOR HIS RELEASE

The defendant's petition alleges that he has "severe allergies, a history of chronic bronchitis, and a family history of heart and lung conditions." However, the defendant has not submitted any proof to substantiate his allegations. To the contrary, the government has received and reviewed the defendant's 2019 and 2020 medical records and there is not a single reference to him suffering from allergies, bronchitis, heart disease, or lung disease.

Moreover, even if the defendant had submitted proof of these alleged medical conditions, none of them are on the Center for Disease Control and Prevention's list of conditions that create an increased risk of severe illness from COVID-19.[2] "Thus, Defendant has not demonstrated that [he] is in the class of medically vulnerable inmates for whom the disease presents a palpable risk of death or serious harm." *United States v. Poncedeleon*, No. 18-CR-6094-FPG, 2020 WL 3316107, at *3 (W.D.N.Y. June 18, 2020).

The defendant's application amounts to no more than a general fear that he may contract COVID-19 while incarcerated. And "the mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons

---

[2] Source: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited August 3, 2020. Serious heart conditions are listed as creating an increased risk for severe illness from COVID-19, but merely having a family history of heart disease is not.

will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." *United States v. Koehn*, No. 10-CR-264S, 2020 WL 4361675, at *6 (W.D.N.Y. July 30, 2020).

As the Court is aware, the Bureau of Prisons ("BOP") has taken a number of steps to prevent (or at least slow) the spread of COVID-19 within its facilities, including at FCI Loretto. In addition, FCI Loretto is following the CDC's recommendations correctional and detention facilities. For example, like other BOP facilities, FCI Loretto required all inmates to be secured in their assigned cell/quarters for at least 14 days. Further, only limited group gathering is permitted at FCI Loretto, and all staff and inmates are screened for a temperature exceeding 100.4 degrees and overt respiratory symptoms. Staff who do not pass the daily screening are not permitted entry into work. Every newly-admitted inmate is also screened for COVID-19 exposure risk factors and symptoms and quarantined for 14 days prior to entering the general population. Asymptomatic inmates with a risk of exposure are placed in quarantine, while symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff. Staff and inmates were issued appropriate face covering and are required to wear the covering when in public areas when social distancing cannot be achieved. BOP has also taken significant steps to limit the number of new individuals in BOP facilities. BOP has, for instance, suspended all volunteer and social visits, visits, and it has also limited the number of outside contractors who may enter a BOP facility.

"In the end, [the defendant] alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that FCI Loretto's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he

6

falls ill." *United States v. Felix*, No. 19-CR-00057, 2020 WL 4344843, at * 6 (W.D.N.Y. July 29, 2020). "Consequently . . . [the defendant] fail[ed] to demonstrate an extraordinary and compelling reason for a sentence reduction." *Id.*

### B. THE DEFENDANT IS A DANGER TO THE COMMUNITY AND THEREFORE DOES NOT QUALIFY FOR COMPASSIONATE RELEASE

Even if a defendant can establish that extraordinary and compelling warrant a reduction of his sentence, a Court cannot grant that reduction if the defendant poses a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2). Here, the nature of the defendant's current conviction indicates that he is sexually attracted to children and has repeatedly acted on that attraction by victimizing children. Minor Victim 1 is so terrified of the defendant that she dissolved into tears when discussing the prospect of his release. The defendant has not offered any evidence that he received sex offender-specific mental health treatment since being incarcerated. It is therefore clear that he continues to pose a danger to the community in general and children in particular. *See United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *4 (D. Conn. Apr. 17, 2020) (denying compassionate release to a defendant convicted of enticing a 13 year old girl because "[u]nder the circumstances of this case, I cannot say that releasing him, even with the restrictive conditions he proposes, would be consistent with my obligation to take full account of the need to protect the public"). As such, the defendant's motion for compassionate release must be denied.

**C.     THE REMAINING 3553(a) FACTORS WEIGH AGAINST REDUCING THE DEFENDANT'S SENTENCE**

    *(1)     The nature and circumstances of the offense and the history and characteristics of the defendant.*

As is set forth above, the defendant enticed a 13 year old girl to produce child pornography and have sex with him. The defendant's offense is extremely serious. Thus, this factor weighs against releasing the defendant.

    *(2)     The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The defendant's offense carried a mandatory minimum sentence of 120 months. His sentencing guideline range was 169 to 210 months. The Court imposed a below guidelines sentence of 144 months, taking over two years off of the low end of the guideline range. Still, this was a substantial sentence that reflected the Court's analysis of the § 3553(a) factors at that time.

Now, the defendant is asking the Court to release him after he served only 84 months of his 144-month sentence (approximately 58%). He is asking to be released five years early. An 84 month sentence is less than half of sentence recommended at the low end of the sentencing guideline range. It is also 15 months (over two years) less than the 10-year mandatory minimum sentence.

In light of the sentencing guidelines recommendations, the applicable mandatory minimum sentence, and the Court's initial judgment that a (below-guidelines but still substantial) 144-month sentence was appropriate, allowing the defendant to serve only 84

months would not reflect the seriousness of the defendant's offenses, would not promote respect for the law in general, and would not provide just punishment. This also weighs against releasing the defendant.

> (3) *The need for the sentence imposed to protect the public from further crimes of the defendant.*

As is set forth in Point II, above, the defendant's sexual attraction to children and demonstrated inability to control that attraction make him dangerous. Releasing him from custody at this time would pose a risk to the safety of the community, in particular to children.

For this very reason, when the defendant is released, his conditions of supervised release will prevent him from having contact with minors for 10 years. Defendant has failed to establish there are no minors at his proposed residence. He also has not indicated whether his proposed employment will bring him into contact with minors.

The defendant has done nothing to demonstrate to this Court that he poses less of a danger to the community now than he did at the time of sentencing or that his proposed release plan mitigates that danger in any way. Therefore, this factor weighs against releasing the defendant.

> (4) *The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Another condition of defendant's supervised release is that he enroll, attend, and participate in mental health treatment specifically designed for the treatment of sexual offenders. Mental health treatment is critical to the defendant's safe and successful reentry.

However, during the COVID-19 pandemic, many of these mental health services are either not available at all or not available to the same extent that they were beforehand. *See United States v. Lebrecht*, No. 1:16-CR-00166 EAW, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) ("As documented by the USPO, it is much more challenging during these times of restricted community-based treatment, to appropriately implement the supervised release conditions."). The defendant does not even attempt to address this issue in his "release plan." Accordingly, yet another § 3553(a) factor weighs against releasing the defendant.

## CONCLUSION

For the foregoing reasons, the defendant's motion for compassionate release should be denied in all respects. However, in the event the Court grants the motion, the government requests that the Court stay the Order and direct that the defendant be held in quarantine for 14 days and medically cleared before he is released in order to mitigate the risk of potential transmission of COVID-19 from the prison population to the public.

DATED: August 10, 2020.

                                              JAMES P. KENNEDY, JR.
                                              United States Attorney

                BY:    s/MEGHAN K. McGUIRE
                          Assistant United States Attorney
                          United States Attorney's Office
                          Western District of New York
                          100 State Street, Suite 500
                          Rochester, New York 14614
                          585-399-3922
                          Meghan.McGuire@usdoj.gov