UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                          Case # 13-CR-6137-FPG

v.                                             DECISION AND ORDER

TERRANCE JUNOT III,

                                  Defendant.

## INTRODUCTION

On July 17, 2020, Defendant Terrance Junot III, an inmate incarcerated at Loretto Federal Correctional Institution, filed a *pro se* Motion for Compassionate Release due to the COVID-19 pandemic. ECF No. 36; *see also* ECF Nos. 40, 44. The Government opposes the motion. ECF Nos. 39, 43. For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

On September 18, 2013, Defendant pled guilty to a one-count Information charging him with enticement of a minor in violation of Title 18, United States Code, Section 2422(b). ECF No. 23. The charge carried a mandatory minimum sentence of 120 months. *Id.* at 1. On February 11, 2014, the Court sentenced Defendant to a term of imprisonment of 144 months followed by a term of 10 years' supervised release during which he must receive sex offender-specific mental health treatment and avoid contact with individuals under 18 years of age. ECF Nos. 30, 32. Defendant's projected release date is June 12, 2023. ECF No. 46 at 1.

## DISCUSSION

**I.    The Compassionate Release Framework**

Defendant seeks release under the First Step Act's "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A). This statute provides an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed. *United States v. Lucas*, No. 15-CR-143,

1

2020 U.S. Dist. LEXIS 75428, at *3 (W.D.N.Y. Apr. 29, 2020) (citation, internal quotation marks, and brackets omitted).  Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if a defendant can show that (1) he has met the statutory exhaustion requirement; (2) "extraordinary and compelling reasons" warrant a reduction; (3) he is not a danger to the community; and (4) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *Lucas*, 2020 U.S. Dist. LEXIS 75428 at *3-4; *see also* U.S.S.G. § 1B1.13 (the United States Sentencing Guidelines Policy Statement on compassionate release).

Because courts consider the § 3553 factors when sentencing defendants, in the context of a motion for compassionate release, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (discussing legislative history of provision).  In other words, the issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at 431.

## II.     Whether Extraordinary and Compelling Reasons Exist

Here, the "extraordinary and compelling" reason that Defendant identifies as justifying release is his increased risk of contracting and sustaining life-threatening complications due to COVID-19 in light of his underlying health conditions and his incarceration at FCI Loretto.

"[A] defendant's pre-existing health conditions . . . in combination with the increased risks of COVID-19 in prisons" may, in some cases, "constitute 'extraordinary and compelling reasons' warranting relief." *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 2020 U.S. Dist. LEXIS 84469, at *6 (D. Conn. Apr. 30, 2020).  Courts "base[] their resolution of compassionate release requests in the COVID-19 era on whether the inmate-movant ha[s] an underlying medical

condition that place[s] her or him at risk of developing a severe case of the illness." *United States v. Lagan*, No. 1:18-CR-0283 (LEK), 2020 U.S. Dist. LEXIS 86330, at *8 (N.D.N.Y. May 11, 2020). "In making such a determination, numerous courts have looked to guidelines issued by the Centers for Disease Control and Prevention ("CDC") as to what conditions place an individual at higher risk for severe illness." *Id.* (citation and internal quotation marks omitted).

Regarding his underlying health conditions, Defendant alleges that he has severe allergies, a history of chronic bronchitis and upper respiratory conditions, sinus issues, and a family history of heart and lung conditions. ECF No. 36 at 1; 40 at 1; ECF No. 45 at 5. However, according to records from the Bureau of Prisons ("BOP"), Defendant has no medical restrictions and is classified as needing the lowest level of medical care. ECF No. 46 at 2. Additionally, the Government asserts that it has reviewed Defendant's medical records from 2019 and 2020 and "there is not a single reference to him suffering from allergies, bronchitis, heart disease, or lung disease." ECF No. 39 at 5.

To the extent Defendant does, in fact, suffer from the conditions alleged, the CDC has identified only chronic bronchitis as a condition known to increase an individual's risk of severe illness from COVID-19. *See Groups at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 16, 2020) [hereinafter "CDC Risk Article"]. The CDC has not identified Defendant's other alleged conditions—allergies, "sinus issues," and a family history of heart and lung disease—as risk factors. *Id.* Additionally, Defendant is 41 years old, which does not place him in the age-category of individuals at increased risk. *See* CDC Risk Article.

Regarding his incarceration, Defendant argues that he has a high risk of contracting COVID-19 at FCI Loretto. He alleges that the BOP cannot effectively manage COVID-19 and that the conditions at FCI Loretto—such as eating, sleeping, and interacting in confined spaces—

increase the risk of transmission.  ECF No. 36 at 2-3; ECF No. 40 at 3-6.  Defendant asserts that inmates and staff at Loretto are not properly tested, are not provided sufficient soap and sanitation supplies, and are not safely wearing masks or socially distancing.  ECF No. 36 at 2-3; ECF No. 40 at 3-6; ECF No. 45 at 6-7.

However, recent data from the Bureau of Prisons does not suggest that FCI Loretto is currently facing an outbreak, let alone an uncontrolled one: as of September 16, 2020, 844 of Loretto's 845 inmates have been tested for COVID-19 and 58 have tested positive and since recovered.  *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited September 16, 2020).  Seven staff members have tested positive and three have recovered.  *Id.*  Defendant asserts that Loretto is underreporting cases or not sufficiently testing, ECF No. 40 at 4-5, but he stops short of alleging that there is an outbreak at the facility.

The Court is "mindful of the fact that conditions of confinement—sharing small cells, eating together, using same bathrooms and sinks, delays in medical evaluation and treatment, and rationed access to soap—make prisons more potentially conducive to the transmission of COVID-19 than elsewhere."  *United States v. Murph*, No. 08-CR-322 (JMA), 2020 U.S. Dist. LEXIS 105100, at *7 (E.D.N.Y. June 16, 2020).  However, "COVID-19 does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Weiskopf*, No. 19-CR-6093-FPG, 2020 U.S. Dist. LEXIS 125460, at *9 (W.D.N.Y. May 14, 2020) (citation and internal quotation marks omitted)).   To demonstrate entitlement to release, a defendant need not "establish his increased risk with mathematical precision," but he should at least "provide a reasonable estimate of the risk he faces." *Id.* at *8.  As one court recently put it, asserting that a defendant's health conditions "may," or even "likely," increase the risk associated with COVID-19 is still "a step or two from stating to a degree of scientific certainty

that [a risk] does exist." *United States v. Delgado*, No. 1:18-cr-902-GHW, 2020 U.S. Dist. LEXIS 166305, at *11 (S.D.N.Y. Sep. 11, 2020) ("[Defendant] has shown that his medical conditions are associated with the possibility of increased risk, but not the degree of possibility; or the extent of the incremental risk. Those gaps are meaningful. The Policy Statements do not support the conclusion that any degree of increased risk is sufficient to the requisite showing of 'extraordinary and compelling circumstances.'").

Defendant has not satisfied his burden of showing entitlement to release here. *See generally United States v. Flores*, No. 17 Cr. 449-17 (KPF), 2020 U.S. Dist. LEXIS 98334, at *10 (S.D.N.Y. June 3, 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citation omitted)). Defendant's allegation of chronic bronchitis, when considered in light of his age and otherwise healthy condition on the one hand, and his incarceration on the other hand, does not rise to the level of extraordinary and compelling circumstances warranting release.

### III. Whether Compassionate Release Would Undermine the Goals of the Original Sentence

Even if Defendant could establish the existence of extraordinary and compelling circumstances, the Court would nevertheless conclude that a reduction of his term of imprisonment is inconsistent with the factors set forth in § 3553(a).

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]

5

>(5) any pertinent [Sentencing Commission policy statement]
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>(7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418, at *7 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

The Court weighed these factors when it imposed Defendant's original term of imprisonment. The nature of Defendant's offense is very serious: Defendant enticed a 13-year-old girl to produce sexually explicit visual depictions of herself and to engage in sexual activity with Defendant. ECF No. 12 at 3-4. This offense carried a mandatory minimum sentence of 120 months. ECF No. 23 at 7. Defendant's sentencing guideline range was 168 to 210 months. ECF No. 23 at 6. The Court imposed a below guidelines sentence of 144 months, taking over two years off of the low end of the guideline range. In accordance with the plea agreement, the Court considered Defendant's acceptance of responsibility. ECF No. 23 at 6. Still, the Court imposed a substantial sentence that reflected its analysis of the § 3553(a) factors at that time.

Defendant argues that he has been a "model inmate" in prison, he has completed numerous educational and vocational programs, he that he is not likely to recidivate, and he has a job and appropriate living arrangements lined up in the event he is released. ECF No. 36 at 5; ECF No. 40 at 8-10; ECF No. 45 at 8-10. While Defendant's rehabilitative and behavioral efforts are worth commending, they do not weigh heavily in favor of release. Indeed, rehabilitation alone cannot constitute an "extraordinary and compelling" reason justifying compassionate release. *See United States v. Sanchez*, No. 08-cr-789-1 (RJS), 2020 U.S. Dist. LEXIS 89324, at *3 (S.D.N.Y. May 21, 2020).

For all the reasons considered at sentencing, Defendant's original sentence was and remains appropriate, notwithstanding the pandemic. Defendant's projected release date is June 12, 2023—still over two and a half years away. Reducing his 12 year sentence by over two years

would not substantially satisfy the purposes of his original sentence, as it would fail to "reflect the seriousness of the offense, []promote respect for the law, [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). While "[a] just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease," *United States v. Vence-Small*, No. 3:18-cr-00031 (JAM), 2020 U.S. Dist. LEXIS 80576, at *11 (D. Conn. May 7, 2020), neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment.

Accordingly, the Court finds that Defendant has not met his burden of showing that release is warranted. *See, e.g.*, *United States v. Alvarez*, No. S3 11 CR 169 (VB), 2020 U.S. Dist. LEXIS 119917, at *4 (S.D.N.Y. July 6, 2020) (denying release to 44 year old inmate with asthma, hyperlipidemia, and slight obesity, who had only served about 48 percent of his sentence); *Sanchez*, 2020 U.S. Dist. LEXIS 89324, at *3 (declining to reduce 20 year sentence by over five years for inmate with diabetes and high blood pressure).

## CONCLUSION

Accordingly, Defendant's motion for compassionate release, ECF No. 36, is DENIED.

IT IS SO ORDERED.

Dated: September 18, 2020
      Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                            United States District Court